DONOHUE, J.S.C.
*389 This case presents the court with an issue of first impression in New Jersey. Namely, whether, after a defendant has been detained pretrial, a later defense attack on the State's detention hearing proffer can be sufficient to reopen the detention hearing.
The court finds that a defendant may not reopen a detention hearing in order to present more developed arguments to mount a late attack on the State's proffer regarding probable cause and the court's finding of probable cause, where the bases for those arguments were known to defendant at the time of the detention hearing. This is especially true where a grand jury has returned an indictment between the time of the detention hearing and the filing of the motion to reopen the detention hearing.
*390 I. BACKGROUND
Defendant, W.A., was arrested May 25, 2017, on a complaint-warrant and charged with two (2) counts of 1st degree aggravated sexual assault in violation of N.J.S.A. 2C:14-2a(1) and two (2) counts of 2nd degree endangering the welfare of a child in violation of N.J.S.A. 2C:24-4a(1). On May 26, 2017, the State moved to detain defendant pending trial in accordance with the Criminal Justice Reform Act ("the Act"), N.J.S.A. 2A:162-15 to -26. Defendant's detention *1232 hearing was scheduled to be heard on May 31, 2017, but was subsequently postponed due to the unavailability of defense counsel. On June 6, 2017, a pretrial detention hearing was held pursuant to the Act to determine defendant's custodial status pending trial.
On June 6, 2017, this court ordered defendant detained pending trial. On the Public Safety Assessment ("PSA"), defendant scored two "2" on the failure to appear risk scale and a three "3" on the risk of new criminal activity scale, both on a scale of 1 to 6. No "elevated risk of violence flag" was present. The recommendation of the PSA to the court was "No Release Recommended."
At the probable cause phase of the detention hearing, the State's proffer outlined the circumstances surrounding defendant's arrest for aggravated sexual assault and endangering the welfare of a child. The State proffered the complaint-warrant, affidavit of probable cause and Preliminary Law Enforcement Incident Report (PLEIR) as well as details of witness statements and police reports in support of probable cause and detention. The State detailed the nature of defendant's relationship with the then-minor victims and explained how defendant was in a relationship with the two (2) female victims' grandmother. The State alleged that defendant used his relationship as a quasi-grandfather to the minor victims to commit acts of sexual assault on separate occasions approximately fourteen (14) years earlier. In support of probable cause, the State noted that both victims individually corroborated the nature of the sexual assaults in addition to specific behavior by defendant. The State further highlighted that *391 defendant's statements were consistent with the victims' statements regarding the time and place of the parties' interactions with each other.
The State also proffered portions of one victim's statement in which she described the particular characteristics of defendant's penis. Specifically, the State noted that one victim described defendant's penis as having a "very dark" shaft and a tip that was "not quite as dark." The State argued that the affidavit of probable cause indicated that the victim's description was corroborated by comparison to a photograph of defendant obtained via search warrant on May 25, 2017.
Initial counsel for defendant had no comment regarding the State's probable cause proffer at the time of the detention hearing.
The court found that, "the State established probable cause that defendant committed continuing acts of sexual assault upon two victims on multiple occasions over a period of time when each victim was less than thirteen (13) years old." Satisfied with the State's probable cause proffer, the court moved to the detention phase of the hearing.
In support of pretrial detention, the State argued that defendant was facing first degree charges, the offenses were sexual in nature and the victims were minors. The State further argued that defendant represents a continuing danger to the victims and the community. While the offenses occurred fourteen (14) years prior, the State maintained that defendant represents a continuing threat based on his pattern of gaining the trust of and eventually exploiting his victims. The State again noted that both victims separately corroborated this pattern of exploitation. The State further argued that the presence of weapons in defendant's home should be considered as a potential danger to the community given the gravity of the charges.
*1233 Regarding defendant's risk of flight, the State cited one previous failure to appear in Florida, an outstanding warrant, also in Florida, for a violation of probation and statements from the *392 victims' family members indicating defendant is more likely than not to move away.
In response, the defense argued that defendant is not a flight risk based on his status as a Cape May County resident for thirty-four (34) years and his ties to the area. Counsel also urged the court to consider the dangers of detention and argued that defendant has been threatened and attempted to harm himself while incarcerated. Defendant further argued that pretrial release with conditions of electronic monitoring, restrictions on computer use and restrictions on contact with victims and family members would assure defendant's appearance in court and eliminate risk to the alleged victims or the community.
After considering the nature and circumstances of the offenses charged, the weight of the evidence against defendant, the recommendation of the PSA and other factors, this court found that no conditions or combination of conditions could ensure defendant's appearance in court and the safety of the victims and community.
Ultimately, this court found that:
Based on the nature of the offenses, defendant represents a danger to the victims and others. There is well-established probable cause to believe that defendant committed sexual assault by digital penetration and forced touching upon the young female victims. Defendant represents a clear, substantial and continuing threat to the community as someone who appears capable of committing such acts. The court is of the firm belief, based upon the evidence presented by the State, including the alleged corroborative statements of the defendant and the photographs of defendant's penis matching the description provided by a victim, that defendant represents such a continuing threat to the victims and the community that pretrial detention is required. Defendant also represents a serious risk of flight as he faces potentially decades in prison if convicted.
On June 13, 2017, defendant's opportunity to appeal the court's pretrial detention decision expired. N.J.S.A. 2A:162-18(c). Pursuant to Rule 2:9-13(b), defendant may appeal an order granting a motion for pretrial detention within seven days of entry of the order. Defendant failed to exercise his right to appeal the pretrial detention order.
On June 20, 2017, following the detention hearing but prior to the instant motion, defendant substituted counsel. On August 15, *393 2017, defendant was indicted before a Cape May County, New Jersey grand jury on two (2) counts of 1st degree aggravated sexual assault in violation of N.J.S.A. 2C:14-2a(1), two (2) counts of 2nd degree sexual assault in violation of N.J.S.A. 2C:14-2b and two (2) counts of 2nd degree endangering the welfare of a child in violation of N.J.S.A. 2C:24-4a(1).
II. DEFENSE MOTION TO REOPEN THE DETENTION HEARING
On November 7, 2017, defendant moved to amend the pretrial detention order under Rule 3:26-2(c)(2), which permits a judge to review conditions of pretrial release. However, the court converted the motion to one under Rule 3:4A(b)(3), the relevant rule under which a motion to reopen is to be heard.
On November 15, 2017, the court held a hearing to determine defendant's motion to reopen the detention hearing. As a corollary to the Act, Rule 3:4A(b)(3) provides:
*1234 A hearing may be reopened at any time before trial if the court finds that information exists not known by the prosecutor or defendant at the time of the hearing and that information has material bearing on whether there are conditions of release that will reasonably assure the defendant's appearance in court when required, the protection of the safety of any other person or the community, or that the defendant will not obstruct or attempt to obstruct the criminal justice process.
[R. 3:4A(b)(3).]
In support of his motion to reopen, defendant cites concerns with several issues the court found significant to establish clear and convincing evidence that defendant should be detained. On the papers, defendant first urges the court to reassess any reliance placed on PSA risk factors four (4), prior misdemeanor convictions, and nine (9), prior sentences leading to incarceration. Defendant argues that those risk indicators should not be indicative of his danger to the community because they stemmed from a disorderly persons conviction that occurred over forty years ago.
Defendant next provides the affidavit of K.G., paramour of the defendant and grandmother of the alleged victims. K.G. attests she never witnessed any illegal behavior by defendant and that the *394 alleged victims, her granddaughters, never reported any inappropriate conduct to her. The affidavit of K.G. further provides that defendant is not a risk to the victims or community because she never witnessed defendant do anything bizarre or illegal. Regarding defendant's risk of flight, counsel again cites the affidavit of K.G. where she verifies her willingness to home monitor defendant upon pretrial release. Defendant urges the court to consider defendant's age (sixty-eight), long-time Cape May County residency and "less than ideal" health as factors that defendant is not a flight risk. Regarding defendant's danger to the victims and community, defense counsel argues that nothing in the file indicates that the home was indeed filled with weapons as alleged by the State.
Defendant acknowledges that the information pertaining to his criminal history, residency and health are not new or unknown at the time of the detention hearing as required under the rule. Defendant argues that the court should reconsider these factors in combination with the defense allegation that the State should have provided defendant's statement and the photograph of defendant's penis to the defendant prior to the detention hearing.
Regarding defendant's statement to police, defendant argues that the State represented that the information garnered from this interview was used to corroborate the time and place of the alleged sexual assaults. Defendant now argues that the only material portion of his statement regarding corroboration was that he lived with K.G., the victims were relatives of K.G. and that defendant occasionally saw the victims approximately ten years prior.
At the heart of the motion, defendant argues that since he was not provided with the photograph of defendant's penis at the time of the detention hearing, then defendant's representation that the photograph does not match the victim's description is new information under the rule because it was not available at the detention hearing.
*395 Where the State represented that the victim's description of defendant's penis as having a "dark shaft" and "light tip" was corroborated by the photograph, defendant argues that the description does not match the photograph or reality. Defendant argues that the photograph contains no identifying characteristics attributable to defendant and does not corroborate the *1235 description by the victim. Rather, defendant argues that the differences between the photograph and the victim's description provide exonerating evidence. Defendant argues that having the benefit of the photograph at the detention hearing would have enabled defendant to undermine the State's probable cause proffer and argue effectively in support of pretrial release. Maintaining his innocence, defendant argues that the State's alleged inability to prove the charges against him nullifies the serious risk of danger posed by the defendant to the alleged victims or the community in this case and mitigates any temptation to flight.
Beyond the question of new information, defendant alludes to perceived deficiencies with the State's case including the mental health status of a victim, the fact that one of the alleged victims had denied, in 2014, any improper conduct by defendant and defendant's vehement denial of the charges and willingness to take a polygraph test in support of his innocence.
The State counters that defendant fails to present any new information not known by the prosecutor or defendant at the time of the hearing that would have a material bearing on the relevant considerations for pretrial release. With regard to defendant's statement to police, the State argues that this information was disclosed to defendant on May 30, 2017, six days before the detention hearing.
While the State acknowledges that the photograph of defendant's penis was not available to defendant at the detention hearing, the State maintains that it was not required to disclose the photograph. Further, the State argues that defendant was aware of the contents of the photograph by way of the State's representation of the description of his penis in the proffer and *396 that defendant had an opportunity to refute that corroboration at the original hearing. The State maintains that its evidentiary burden was satisfied at the detention hearing and that no new information has been presented to reopen that hearing.
A. STATE'S DISCOVERY AND DISCLOSURE OBLIGATION
In considering whether defendant has triggered a reopening of his detention hearing, the court first looks to the discovery and disclosures required to be made by the State prior to a detention hearing. The New Jersey Supreme Court addressed the scope of required discovery at a pretrial detention hearing under the Act in State v. Robinson, 229 N.J. 44, 160 A.3d 1 (2017). In Robinson, the Court aimed to set forth a workable standard for discovery within the tight timeframe of the law that balances a defendant's liberty interests while not imposing impractical demands on law enforcement. Id. at 68, 160 A.3d 1. A prosecutor seeking pretrial detention shall provide the defendant with all statements or reports in its possession the State relies on to establish probable cause at the pretrial detention application. R. 3:4-2(c)(1)(B); Robinson, 229 N.J. at 70, 160 A.3d 1. Specifically, the State must disclose the complaint, the PSA, affidavit of probable cause, any available preliminary law enforcement incident reports (PLEIR), exculpatory evidence and "all statements and reports relating to the affidavit of probable cause." Robinson, 229 N.J. at 70, 160 A.3d 1.
The State is not required to disclose "video and audio files from body cameras, dash cameras, surveillance cameras, cellphones, 9-1-1 calls or other similar items" in support of the probable cause affidavit as they are not considered the functional equivalent of a statement for purposes of a discovery rule for detention hearings. Ibid. However, if an affidavit of probable cause refers to a surveillance video *1236 or comparable item, the State must disclose a statement or report that summarizes the video or item referenced. Ibid. *397 In Robinson, the affidavit of probable cause attached to defendant's complaint described what two eyewitnesses observed and noted that the witnesses identified defendant using a photograph. Ibid. In addition to statements or reports, the State is required to "document the process and record certain details when an eyewitness makes an identification." Id. at 77, 160 A.3d 1 (citing State v. Henderson, 208 N.J. 208, 241, 27 A.3d 872 (2011) and State v. Delgado, 188 N.J. 48, 63-64, 902 A.2d 888 (2006) ). That information should be disclosed along with copies of any photo arrays or photos used in the identification process. Robinson, 229 N.J. at 77, 160 A.3d 1. However, the Court noted that the required disclosure of photos used in an identification process was the exception to the rule requiring discovery of "statements or reports," not photographs. Ibid. The Court cautioned that by ordering disclosure of the photographs, they did not suggest that other documents or underlying evidence referred to in an affidavit of probable cause would be subject to disclosure under Rule 3:4-2(c)(1)(B). See Robinson, 229 N.J. at 77 n.3, 160 A.3d 1.
In the present case, defense counsel argues that the State should have disclosed the photograph of defendant's penis as it is material to probable cause and was relied upon by this court in its decision to detain defendant pending trial. At the detention hearing, the State submitted S-1, containing the complaint-warrant, affidavit of probable cause and the PLEIR. While the photograph of defendant's penis was referenced by the State in both the PLEIR and affidavit of probable cause, it was not disclosed to defendant at the hearing. In looking to Robinson for guidance, the court finds that the State was not required to disclose the actual photograph. In Robinson, the State was required to disclose a photograph at the detention hearing because the photograph was used to positively identify the defendant. Id. at 77, 160 A.3d 1. This case is distinguished from Robinson in that the photograph was not used to help identify defendant but rather to corroborate the statements of the alleged victims with regard to a body part of defendant.
*398 Despite the fact that the photograph was not supplied to defendant prior to the detention hearing, the State provided a sufficient description of the photograph's contents. Furthermore, defendant certainly had the opportunity to obtain his own photograph to offer in opposition to the State's proffer. Even if defendant is correct that the description by the victim does not match reality, this is not new and material information that was unavailable to defendant at the detention hearing.
Based on the above, the court concludes that the State was not deficient in its disclosures to defendant prior to the detention hearing. Furthermore, these are issues more appropriate for an appeal from a trial court detention decision.
B. STANDARDS FOR REOPENING THE DETENTION HEARING
Rule 3:4A(b)(3) provides that a detention hearing may be reopened if there is new information not known by either the prosecutor or defendant at the original hearing and that new information has a material bearing on whether there are conditions of release that will assure defendant's appearance in court, the safety of victims and the community and that defendant will not obstruct the criminal justice process.
As indicated above, this is a case of first impression in New Jersey. The Act has been in effect since January 1, 2017, and *1237 there are no reported New Jersey cases to date that address what is considered new and material information sufficient to reopen a detention hearing. The Act follows the federal Bail Reform Act of 1984, 18 U.S.C. §§ 3141 to 3156, in many respects and New Jersey courts may look to the federal courts for guidance on questions unsettled by state case law. See State v. Ingram, 230 N.J. 190, 197, 205, 165 A.3d 797 (2017) ; State v. Ates, 217 N.J. 253, 269, 86 A.3d 710 (2014) (considering federal decisions that interpret federal wiretap statute when reviewing similar state law); *399 State v. Ball, 141 N.J. 142, 156, 661 A.2d 251 (1995) (similar holding regarding federal racketeering law).
Under 18 U.S.C. § 3142(f)(2)(B) :
The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community.
[ 18 U.S.C. § 3142(f)(2)(B).]
This is analogous to the language of Rule 3:4A(b)(3) and N.J.S.A. 2A:162-19(f).
A number of cases on the federal level have addressed what defines new information as required to reopen a detention hearing. Information that was known but not introduced by the defendant at the time of the hearing is not considered new information for the purposes of reopening a detention hearing. See United States v. Dillon, 938 F.2d 1412 (1st Cir. 1991) (affirming a district court decision not to reopen a detention hearing based on defendant's submission of affidavits from witnesses that could have been introduced at the original hearing). See also United States v. Hare, 873 F.2d 796 (5th Cir. 1989) (affirming a district court decision not to reopen a detention hearing based on proffered testimony of defendant's family members and a friend because the proffered information was not new). However, information that was not introduced because it was genuinely not known to the movant at the time of the hearing or related to events that transpired after the hearing may provide appropriate grounds to reopen. See United States v. Peralta, 849 F.2d 625, 626-27 (D.C. Cir. 1988) (per curiam) (upholding the reopening of a detention hearing when government sought to offer evidence of a ruling, adverse to defendant, on a suppression motion entered after original detention hearing). The "new information" requirement to reopen a detention hearing is grounded in the rationale that "a rule that would not discourage a party for failing to acquire readily available evidence for presentation the first time is a rule *400 that encourages piecemeal presentations." United States v. Flores, 856 F.Supp. 1400 (E.D. Cal. 1994).
Here, defendant offers several pieces of information that were not presented at the original detention hearing, namely, the affidavit of his paramour, statements that question the mental health of a victim, claims that a victim previously denied any inappropriate sexual contact and defendant's willingness to take a polygraph test.
While the affidavit of defendant's paramour regarding her readiness to home monitor defendant may be relevant to the risk of flight and danger to the community, it is not new information within the meaning of the rule. It is information that was available to defendant at the time of the detention hearing. Defendant's alleged knowledge of a victim's prior denial of inappropriate sexual contact and defendant's *1238 willingness to take a polygraph are not new developments occurring after the detention hearing. While all of this information may be relevant to defendant's case it is not new information because it was known by defendant and could have been presented at the original detention hearing. Defendant's failure to introduce information that was available to him prior to the detention hearing negates defendant's arguments for the reopening of the detention hearing. See Dillon, 938 F.2d at 1415.
Rule 3:4A(b)(3) does not provide for a reopening of a detention hearing based on defendant's late attack on the State's probable cause proffer. The court in United States v. Rodriguez-Adorno, 606 F.Supp.2d 232 (2009), considered similar circumstances. There, the defendant alleged that there was new exculpatory information contained in evidence collected from the discovery process and his own investigation that warranted reopening his detention hearing. Id. at 237. Defendant there outlined all of the evidence being offered against him and systematically detailed the weaknesses in the government's case. Ibid.
In considering the purpose of reopening a detention hearing, "the court cannot fathom that Congress intended the possibility of *401 detention status modification to be twisted into an open invitation for parties to bring motions for detention review at any and every stage of trial in which new information arises regarding the weight and credibility of evidence in the case." Id. at 238. See also United States v. Delker, 757 F.2d 1390, 1395 (3rd Cir. 1985) (bail hearings should not become mini-trials to debate likelihood of conviction).
The only reasonable conclusion here, is that the New Jersey legislature intended "new information" "to signify something other than a defendant's own evaluation of the strength of the case against him such as truly changed circumstances, something unexpected or a significant event." Rodriguez-Adorno, 606 F.Supp.2d at 239. See also United States v. Patriarca, 948 F.2d 789, 794 (1991) (citing the occurrence of a "significant event" in the interval between the magistrate's detention order and the district court's release order); United States v. Chen, 820 F.Supp. 1205, 1209 (N.D. Cal. 1992) (citing the case's "surprising turns" as justification for the court's reconsideration of the pretrial release order for certain defendants).
Because the Bail Reform Act permits the judge to consider the weight of the evidence against the defendant, "it may well be necessary to open up the issue of probable cause since that too is a question of evidentiary weight." United States v. Hurtado, 779 F.2d 1467, 1479-80 (11th Cir. 1985). Such an extraordinary circumstance would be when "new evidence brought by a defendant so deeply hurt the government's case that probable cause could no longer be assured by the indictment alone." Rodriguez-Adorno, 606 F.Supp.2d at 237.
It would appear, however, that these considerations with regard to the State's probable cause proffer at the time of the detention hearing would only be applicable before an indictment is returned. Otherwise, a defendant could utilize a motion to reopen a detention hearing in an effort to undermine the findings of a grand jury instead of taking the appropriate course and moving to dismiss the indictment. Indeed, Rule 3:4A(b)(2) allows the court to immediately *402 find probable cause at a detention hearing without a State's proffer if a grand jury has returned an indictment.
Here, the material thrust of defendant's motion attacks the State's detention hearing proffer related to probable cause, which ultimately included many of the same facts upon which the court based its *1239 detention decision. Defendant's arguments in this regard do not satisfy the requirements of Rule 3:4A(b)(3) to reopen his detention hearing. Defendant presents no material information that was not known at the time of the detention hearing, but only an alternative interpretation of the import of the State's proffer and the self-serving arguments of defendant and those who support his release. Additionally, defendant's motion represents an attack on the findings of the grand jury which is cognizable under Rule 3:10-2(c), not under Rule 3:4A(b)(3) or under Rule 3:26-2(c)(2), the rule under which defendant first brought the instant motion.
III. CONCLUSION
It is clear from persuasive federal jurisprudence as well as an analysis of the Act and New Jersey jurisprudence, that a defendant who has been detained pretrial cannot attack the initial detention decision by seeking to undermine the State's proffer with a new interpretation of the evidence or with information that was available at the time of the detention hearing. This is true even where defense investigation may reveal information that might arguably undermine the State's probable cause proffer. Only where there is some new information that would create serious doubt about the credibility of the State's initial proffer would the court consider disturbing an initial finding of probable cause, and only where a grand jury has not yet handed up an indictment. If an indictment has been handed up, then defendant would be constrained to move to dismiss the indictment, rather than seek to reopen the detention hearing. Additionally, a motion to reopen under Rule 3:4A(b)(3) cannot be used as a substitute for an appeal under Rule 2:9-13(b).
*403 Here, defendant offers nothing that creates any serious doubt about the adequacy of the State's proffer at the detention hearing. Defendant has failed to carry his burden under Rule 3:4A(b)(3).
Consequently, defendant's motion to reopen the detention hearing in question is DENIED.